**Maria AQUINDA, et al., Plaintiffs,**

v.

**TEXACO, INC., Defendant.**

**No. 93 Civ. 7527 (JSR).**

United States District Court,
S.D. New York.

Nov. 12, 1996.

See also 847 F.Supp. 61.

Joseph Kohn, Kohn Nast & Graf, Philadelphia, PA, for Plaintiffs.

Griffin B. Bell, George S. Branch & Dan H. Willoughby, King & Spalding, New York City, for Defendant.

## OPINION AND ORDER

RAKOFF, District Judge.

Residents of the Oriente region of Ecuador have twice brought class actions against Texaco in the courts of the United States, seeking extensive relief for vast devastation to that region caused by the decades of oil exploration and extraction activities of a consortium over which both Texaco and Ecuador's state-owned oil company, Petroecuador, have at various times exercised substantial control.[1] The first such action, filed in Har-

---

**1.** The initial exploration was undertaken in 1964 by a Texaco subsidiary pursuant to a concession agreement with the Republic of Ecuador. Further exploration between 1965 and 1973 by a joint Texaco–Gulf consortium led to discovery of substantial oil reserves. In 1974, with the start of large-scale extraction, Petroecuador acquired a 25% interest in the consortium, which was increased to 62½%% in 1976 when Petroecuador acquired Gulf's share. In 1992, Petroecuador

ris County, Texas in late August, 1993 and promptly removed to the United States District Court for the Southern District of Texas, was dismissed fewer than five months later on grounds of international comity and forum non conveniens. *Sequihua v. Texaco, Inc.,* 847 F.Supp. 61 (S.D.Tex.1994). By contrast, when the instant action was filed in the Southern District of New York in early November, 1993, the late Judge Broderick accorded plaintiffs unusual leeway, through discovery and otherwise, to try to prove that this seemingly Ecuadoran-centered lawsuit properly belonged here. Following Judge Broderick's death, the discovery was completed under the supervision of Judge Parker and Magistrate Judge Smith, and the case was then reassigned in 1996 to this Court, to which the parties presented still further written submissions as well as several hours of oral argument.

■ In hindsight, such solicitude may have been improvident, for the overwhelming obstacles to the Court's jurisdiction that were already apparent to the court in *Sequihua* have become increasingly obvious to this Court as well. Indeed, after a full review of the underlying record, the Court finds itself obliged to dismiss this action on the same grounds of international comity and forum non conveniens so well stated in *Sequihua,* to which this Court can add little. While it is true that, in contrast to the situation in *Sequihua,* defendant Texaco is headquartered in this judicial district and the Complaint alleges that decisions made by its executives in New York were important to the allegedly unlawful activities undertaken by the consortium in Ecuador, these differences are, in the Court's view, insufficient to overcome the balance of other factors that weigh so heavily against retaining jurisdiction, as outlined in *Sequihua.* As for the submissions offered here by the Congress of Ecuador asking this Court to disregard the submissions of the

Government of Ecuador objecting to this Court's retention of jurisdiction, the litany of conflicting submissions from these representatives and officials further evidences the need for this Court to resist intruding on matters that are already the subject of intense political debate in the affected foreign country.

■ Beyond the grounds specified in *Sequihua,* this Court further concludes that there is another independently-sufficient reason why this action must be dismissed: plaintiffs' failure to join indispensable parties, namely, Petroecuador and the Republic of Ecuador. The extensive equitable relief sought by the plaintiffs—ranging from total environmental "clean-up" of the affected lands in Ecuador to a major alteration of the consortium's Trans–Ecuador pipeline to the direct monitoring of the affected lands for years to come—cannot possibly be undertaken in the absence of Petroecuador, which has owned 100% of the consortium since 1992 and 100% of the pipeline since 1986, or the Republic of Ecuador, which has helped supervise the consortium's activities from the outset and which owns much, if not all, of the affected lands. Petroecuador and the Republic of Ecuador thus are necessary "persons to be joined if feasible" under either and both prongs of Fed.R.Civ.P. 19(a).[2] *See Lykins v. Westinghouse Electric,* 710 F.Supp. 1122, 1125 (E.D.Ky.1988); *Conservation Council of Western Australia, Inc. v. Aluminum Co. Of America,* 518 F.Supp. 270, 277 (W.D.Pa.1981).

■ Yet while the Republic of Ecuador and Petroecuador are subject to service of process, neither can feasibly be joined in this action because, under the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603(b) and 1604, neither is subject to suit in the United States. When a necessary party is thus immune from suit because of sovereign immunity, that alone is ordinarily

acquired 100% ownership of the consortium, eliminating any further role by Texaco.

2. Rule 19(a) states in pertinent part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the

person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

sufficient to warrant dismissal of the action. *See Fluent v. Salamanca Indian Lease Authority,* 928 F.2d 542, 547–48 (2d Cir.1991), *cert. denied,* 502 U.S. 818, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991).

Even if this were not so, the factors for determining indispensability set forth in Fed. R.Civ.Proc. 19(b) strongly favor dismissal in these circumstances.[3] In the absence of Petroecuador and the Republic of Ecuador, any order of this Court granting any material part of the Ecuador-directed equitable relief demanded by plaintiffs would be unenforceable on its face, prejudicial to both present and absent parties, and an open invitation to an international political debacle. While the parties dispute whether the courts of Ecuador can provide them with an adequate remedy, it is patently clear that the courts of the United States cannot.

█ In short, plaintiffs' imaginative view of this Court's power must face the reality that United States district courts are courts of limited jurisdiction. While their power within those limits is substantial, it does not include a general writ to right the world's wrongs.

Accordingly, Texaco's motion to dismiss is granted, and the Clerk is directed to enter judgment on behalf of the defendant.

In addition, counsel for the parties here, who also represent the parties in the related case of *Ashanga et al. v. Texaco, Inc.,* 94 Civ. 9266 (JSR), are directed to submit within 20 days from the date of this order, memoranda of law, not to exceed 10 pages per side, addressing whether that case should be controlled by this opinion or whether dismissal of that action should be separately briefed.

SO ORDERED.

---

**3.** Rule 19(b) provides: "If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."