**50**

Maria AGUINDA, et al., Plaintiffs,

v.

TEXACO, INC., Defendant.

No. 93 Civ. 7527 (JSR).

United States District Court,
S.D. New York.

Aug. 12, 1997.

Griffin Bell, George S. Branch, Edward Kehoe, Atlanta, GA, Paul J. Curran, New York City, for Plaintiffs.

Lawrence R. Jerz, White Plains, NY, Defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

On November 12, 1996, the Court dismissed this action on three separate grounds: forum non conveniens, international comity, and failure to join two indispensable parties (the Republic of Ecuador and its state-owned oil company, Petroecuador). *See Aquinda v. Texaco, Inc.,* 945 F.Supp. 625 (S.D.N.Y.1996)(familiarity with which is here presumed). Shortly thereafter, plaintiffs moved for reconsideration, purportedly pursuant to former Rule 3(j) of the Local Civil Rules of the Southern District of New York (now renumbered as Rule 6.3)—but not on the requisite ground that the Court had overlooked factual matters or controlling decisions. *Id. See, e.g., St.Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.,* 1996 WL 227825 (S.D.N.Y.1996); *In re Houbigant,Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y. 1996) (collecting cases). Rather, reconsideration was premised on the allegation that the Republic of Ecuador (the "Republic"), which had hitherto strenuously objected to the Court's exercise of jurisdiction over this Ecuadorian-centered dispute, was now prepared not only to withdrawn its objection but also to seek to intervene in the case. Concomitantly, the Republic and Petroecuador filed a motion, pursuant to Fed.R.Civ.P. 24(a) and (b), seeking to intervene as plaintiffs in the by-then-dismissed action. After both motions were fully briefed, the Court, by Order dated March 15, 1997, asked the Republic to provide further clarification of its position.

Having now received the Republic's response, along with further submissions of the parties, the Court, after review of the entire record, denies the Republic's and Petroecuador's motion to intervene and, *a fortiori,* the plaintiffs' motion for reconsideration, for the following reasons.

*First*, the motion to intervene is patently, and prejudicially, untimely. Rule 24, Fed. R.Civ.P., conditions intervention (whether of right or permissive) "[u]pon timely application." While the Republic's and Petroecuador's application to intervene as co-plaintiffs is not automatically barred by the fact that it was made after the suit had already been dismissed, *see United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (post-judgment intervention of putative class member permissible for purposes of pursuing appeal of denial of class certification), such manifestly belated intervention is properly limited to circumstances far more compelling than those here presented. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70–71 (2d Cir.1994)(post-judgment intervention denied as untimely under multi-factor analysis); *Farmland Dairies v. Commissioner of New York State Department of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir.1988)(same).

Here, from the outset of this case, and through a period of nearly three years of extensive discovery and motion practice, the Republic's sole participation in this litigation consisted of its repeatedly lodging formal and unequivocal demands that the Court dismiss the action in the interests of international comity. Indeed, the Republic reiterated its objection as late as June 10, 1996, after the defendant's motion to dismiss had been fully briefed and argued and was *sub judice* with the Court. Only after the Court had rendered judgment and dismissed the complaint did the Republic reverse its position and withdraw the objection.

Counsel for the Republic concedes that "Ecuador's position regarding this litigation ... [while] the subject of debate within Ecuador ... was only recently resolved in favor of Ecuador's support of this action and seeking intervention," Memorandum In Support Of Motion To Intervene, at 6–7. Nor does the Republic contend that those interests that it now claims warrant its intervention in this litigation (either permissively or as of right) did not exist in the same degree when the litigation was first commenced three years ago. Rather, the Republic's position reduces to the assertion that because, as the result of an electoral change, the Republic has changed its view of this case, it should be permitted (unlike any other party) to disregard its former representations to the Court and reverse its position after the case has been dismissed. Finality in litigation and the orderly administration of justice would be rendered a mockery and a sham if electoral changes and accompanying shifts in viewpoint could of themselves justify renunciations of formal positions previously taken with the Court, let alone constitute grounds for "timely" intervention after a case has gone to judgment.

In this case, moreover, permitting such maneuvers to succeed would severely prejudice defendant, which, having reached a settlement of these matters with the Republic well before this litigation was commenced (see *infra*), would now have to face the reopening of this already very expensive and time-consuming litigation on the basis of claims alleged by the very party with which defendant had previously settled. After consideration of these and all other material circumstances, *see Pitney Bowes*, 25 F.3d 66 (2d Cir.1994), the Court finds that the motion to intervene is plainly untimely.

*Second*, the Republic's moving papers, including those submitted in response to this Court's Order of March 15, 1997 requesting clarification, provide another, independent reason for denying the motion to intervene, to wit, the Republic's unwillingness to assume the responsibilities of a proper party plaintiff. Specifically, the Republic attaches limitations and conditions to its proposed waiver of sovereign immunity such that it would retain all the benefits of a proper party plaintiff while not being required to assume all the correlative burdens. This is particularly inappropriate in a case where it is undisputed that Ecuador at all times held the predominant, and now the sole ownership of the oil-drilling consortium of whose activities plaintiffs here complain, and where the defendant claims that any remaining liability is that of the Republic.

In its Order dated March 25, 1997, the Court asked the Republic, if it still desired to intervene, to provide binding assurances that it "is expressly prepared to waive sovereign

immunity and submit fully to the jurisdiction of this Court (including jurisdiction over any counterclaims and cross-claims that may be filed against Ecuador in connection with this action)." *Id.* at 2–3. The official Response, dated April 22, 1997, of the Office of the Attorney General of the Republic of Ecuador, in the translation furnished by the Republic's Consul General, states in pertinent part as follows:

> In regards to the order issued by you on March 25, of this year, in the lawsuit filed by indigenous people and colonists of Ecuador against Texaco which is being tried in the Court of the Southern District of New York, No. 93–CIV, 7527(JSR) (Maria Aguinda vs. Texaco), in my role as judicial representative of the Ecuadorian State, with the corresponding judicial patronage, I express to you that Ecuador ratifies its participation in this lawsuit in support of said persons in order to procure the necessary indemnization in order to alleviate the environmental damages caused by Texaco while the company carried out labors, for the exploration and exploitation of hydrocarbons in the amazon region of our country.
>
> The Attorney General's Office under my direction considers that this lawsuit, which involves Ecuadorian citizens as actors exercising their personal rights, does not compromise and has no reason to compromise the sovereignty of the Ecuadorian State.
>
> The judicial participation of Ecuador before the Court of the Southern District of New York has as its exclusive objective to collaborate in order to reach a solution of this claim and is circumscribed to the before mentioned lawsuit only. As a consequence, the State which I represent does not participate or assume any responsibility in any other trial which might be initiated by or against the Texaco Company or is derived from No. 93–CIV, 7527(JSR) (Maria Aguinda vs. Texaco), or which has been filed by or might be filed by other persons, natural or judicial, whether they be Ecuadorians or of any other nationality, against Texaco or against the Ecuadorian State, in relation to this same problem.

On its face, this response not only fails to provide the requested assurances but also states, albeit somewhat ambiguously, a variety of limitations and qualifications on any waiver of sovereign immunity that might otherwise be inferred. While understandable, these equivocations are fatal, for it is well-settled that a waiver of sovereign immunity must be clear, complete, unambiguous, and unmistakable in order to be effective. *See, e.g., Drexel Burnham Lambert Group, Inc. v. The Committee of Receivers for A.W. Galadari,* 12 F.3d 317, 325–26 (2d Cir.1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1644, 1645, 128 L.Ed.2d 365 (1994); *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017–18 (2d Cir. 1991); *Eaglet Corp. Ltd. v. Banco Central De Nicaragua,* 839 F.Supp. 232, 234 (S.D.N.Y. 1993), *aff'd,* 23 F.3d 641 (2d Cir.1994). *See also Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir.1996).

In the absence of such a waiver, neither the Republic nor Petroecuador qualifies for the requested intervention as a plaintiff, for neither is willing or able to assume the responsibilities and potential liabilities of such a party. While the Attorney General's Response suggests that, contrary to the Republic's motion to intervene as a full party plaintiff, the Republic might actually be seeking to intervene on a more limited basis to help obviate the problem of international comity and mitigate any problems in effectuating a judgment for the existing plaintiffs, an indispensable party would still be effectively absent so far as Texaco's inevitable claims against the intervenors would be concerned. *See Aquinda,* 945 F.Supp. at 628. No path provided by Rule 24 is a one-way street.

*Third,* even if there were no limitations on the Republic's and Petroecuador's request to intervene, they have no legal interest warranting such intervention. For it is undisputed that the Republic (and Petroecuador) previously entered into a formal settlement with the defendant releasing the defendant from all liabilities it may have to these would-be intervenors. Thus, the only interests they can lawfully assert are those of other parties—a legally insufficient basis for intervention under Fed.R.Civ.P. 24. *See New York*

*News, Inc. v. Kheel,* 972 F.2d 482, 486–87 (2d Cir.1992).

For each and all of the preceding reasons, the Republic's and Petroecuador's motion to intervene is denied in all respects, as is plaintiffs' motion for reconsideration premised upon such intervention.

SO ORDERED.