**Gabriel Ashanga JOTA, individually and as guardian for Raul Antonio Ashanga Casteno, Paula Nerida Ashanga Casteno, Christian Ashanga Casteno and Judith Reutegui Casteno, et al., Plaintiffs–Appellants, Republic Of Ecuador and Petroecuador, Movants–Appellants,**

v.

**TEXACO INC., Defendant–Appellee.**

Nos. 97–9102, 97–9104, 97–9108.

United States Court of Appeals, Second Circuit.

Argued April 29, 1998.

Decided Oct. 5, 1998.

Cristobal Bonifaz, Amherst, Mass. (John C. Bonifaz, Amherst, Mass.; Joseph C. Kohn, Martin J. D'Urso, Craig W. Hillwig, Kohn Swift & Graf, Philadelphia, Penn.; Amy Damen, Sullivan & Damen, White Plains, NY, on the brief), for plaintiffs-appellants.

Ronald C. Minkoff, New York City (Jonathan S. Abady, Beldock Levine & Hoffman, New York City, on the brief), for movants-appellants.

George S. Branch, New York City (Griffin B. Bell, Daniel J. King, Edward G. Kehoe, Richard T. Marooney, Jr., King & Spalding, New York City; Paul J. Curran, Milton J. Schubin, Kaye, Scholer, Fierman, Hays & Handler, New York City; Lawrence R. Jerz, Texaco Inc., White Plains, N.Y., on the brief), for defendant-appellee.

(Arthur L. Berney, H. Kent Greenfield, Boston College Law School, Newton, Mass.; Elizabeth A. Broderick, Holocaust Human Rights Project, Julie Curan, Environmental Law Society, submitted a brief for amici curiae Owen M. Kupferschmid Holocaust Human Rights Project, et al.).

(J. Martin Wagner, EarthJustice Legal Defense Fund, San Francisco, Cal., submitted a brief for amicus curiae the Sierra Club).

Before: NEWMAN and LEVAL, Circuit Judges, and WEXLER,* District Judge.

JON O. NEWMAN, Circuit Judge:

This appeal poses important issues concerning the appropriateness of a United States forum for litigation in which a foreign government is significantly interested. Issues of forum non conveniens, comity, and indispensable party all arise in an unusual context in that the foreign country, the Republic of Ecuador, initially expressed vigorous opposition to the maintenance of this litigation in a United States Court and now, after a change in the government, just as vigorously urges that the litigation proceed here. Two sets of putative class action plaintiffs who sued Texaco Inc. ("Texaco") appeal from the judgments of the District Court for the Southern District of New York (Jed S. Rakoff, District Judge), entered on November 13, 1996, and August 13, 1997, respectively. The Court dismissed both actions on the grounds of (i) forum non conveniens, (ii) international comity, and (iii) failure to join an indispensable party. The Republic of Ecuador and its state-owned corporation, Petro-Ecuador (together, the "Republic"), appeal from the Court's August 12, 1997, denial of their post-judgment motion to intervene, in order to cure their failure to be joined; one set of plaintiffs also appeals from the contemporaneous denial of its post-judgment motion for reconsideration.

We hold that dismissal on the ground of forum non conveniens was erroneous in the absence of a condition requiring Texaco to submit to jurisdiction in Ecuador and that the dismissal on this ground inappropriately rested entirely on adoption of another district court's weighing of the relevant factors in litigation that is arguably distinguishable. We similarly hold that dismissal on the ground of comity was erroneous in the absence of a condition requiring Texaco to submit to jurisdiction in Ecuador. We also hold that the District Court's reasoning regarding the plaintiffs' failure to join an indispensable party sufficed only to support dismissing so much of the complaint as sought to enjoin activities currently under the Republic's control. Finally, we note that upon the remand that is required as a consequence of our rulings, it will be appropriate for the District Court to reconsider the issues before it in light of Ecuador's changed litigating position. Accordingly, we vacate the judgments and remand for further consideration.

Background

Understanding the issues requires a detailed outline of the procedural history of the litigation.

1. The Complaints

This case involves consolidated appeals from two actions filed on behalf of two putative classes. In one action, *Aguinda v. Texaco Inc.*, Dkt. No. 93 Civ. 7527, 1994 WL 142006 (S.D.N.Y. April 11, 1994), certain residents of the Oriente region of Ecuador— primarily members of indigenous tribes— sued Texaco for environmental and personal injuries that allegedly resulted from Texaco's exploitation of the region's oil fields. In the other action, *Ashanga v. Texaco Inc.*, S.D.N.Y. Dkt. No. 94 Civ. 9266, certain residents of Peru, who live downstream from Ecuador's Oriente region, assert similar injuries resulting from these activities.

Both complaints allege that Texaco polluted the rain forests and rivers in Ecuador and Peru during oil exploitation activities in Ecuador between 1964 and 1992. In particular, they allege that Texaco improperly dumped large quantities of toxic by-products of the drilling process into the local rivers, contrary to prevailing industry practice of pumping these substances back into the emptied wells. Additionally, they allege that Texaco used other improper means of eliminating toxic substances, such as burning them, dumping them directly into landfills, and spreading them on the local dirt roads. They also allege that the Trans–Ecuadoran Pipeline, constructed by Texaco, has leaked large quantities of petroleum into the environment. The named plaintiffs allege that they and

---

* The Honorable Leonard D. Wexler of the United States District Court for the Eastern District of New York, sitting by designation.

their families have experienced various physical injuries, including poisoning and the development of pre-cancerous growths.

The complaints sought money damages under theories of negligence, public nuisance, private nuisance, strict liability, "medical monitoring,"[1] trespass, civil conspiracy, and violations actionable under the Alien Tort Act, 28 U.S.C. § 1350 ("ATA"). The plaintiffs also sought "equitable relief to remedy the contamination and spoliation of their properties, water supplies and environment."[2]

## 2. Texaco's Motion to Dismiss

In December 1993, Texaco moved to dismiss on the grounds of (i) failure to join an indispensable party—the Republic of Ecuador, (ii) international comity, and (iii) forum non conveniens. Inherent in all three defenses was the close participation of the Ecuadoran government in the activities for which Texaco was sought to be held liable. Elaborating its grounds for dismissal, Texaco submitted an affidavit by the president of a Texaco subsidiary, averring the following facts. Texaco had participated in oil drilling in Ecuador exclusively through its fourth-level subsidiary, Texaco Petroleum Company ("TexPet"). Beginning in 1965, TexPet operated a petroleum concession for a consortium ("the Consortium") owned in equal shares by TexPet and Gulf Oil.[3] Oil was first discovered in the Oriente in 1969, and was extracted thereafter by the Consortium. In 1974, the Ecuadoran government, through its state-owned oil agency, currently known as PetroEcuador, obtained a 25 percent share of the Consortium. By 1992, PetroEcuador had become the sole owner of the Consortium.[4]

In addition to evidence presented by Texaco suggesting that the Republic had been heavily involved in the drilling operations and had eventually become the sole operator, Texaco submitted a copy of a letter written by Ecuador's ambassador to the United States and addressed to the United States Department of State. In that letter, Ambassador Edgar Teran asserted that the Republic considered this action (as well as a similar case brought by other plaintiffs in the Southern District of Texas, *Sequihua v. Texaco, Inc.*, 847 F.Supp. 61 (S.D.Tex. 1994), an affront to Ecuador's national sovereignty). Ambassador Teran stated that Ecuador had a paramount interest in formulating its own environmental and industrial policies, and that Ecuador's courts were open to adjudicate such disputes.

## 3. District Court's Initial Decision

In an order filed in April 1994, the District Court (Vincent L. Broderick, District Judge), reserved decision on Texaco's motion. *See Aguinda v. Texaco, Inc.*, No. 93 Civ. 7527, 1994 WL 142006 (S.D.N.Y.1994). The Court acknowledged that forum non conveniens dismissal might be appropriate as to the claims seeking money damages. Judge Broderick reasoned that "[d]isputes over class membership, determination of individualized or common damages, and the need for large

---

**1.** The plaintiffs apparently intended to assert an independent cause of action to recover the costs of a program that would monitor the plaintiffs and treat any medical conditions that may ultimately develop.

**2.** Though the complaints make only a general demand for equitable relief, the plaintiffs clarified their demand somewhat during discovery. The relief they seek includes the following: undertaking or financing environmental cleanup, to include access to potable water and hunting and fishing grounds, renovating or closing the Trans-Ecuadoran Pipeline, creation of an environmental monitoring fund, formulating standards to govern future Texaco oil development, creation of a medical monitoring fund, an injunction restraining Texaco from entering into activities that run a high risk of environmental or human injuries, and restitution.

**3.** TexPet's ownership interest was initially held through its subsidiary, Texaco de Petroleos del Ecuador C.A. ("TPE"). However, in 1973, TexPet directly acquired TPE's interest in the Consortium.

**4.** In 1974, TexPet and Gulf each owned 37.5 percent shares. In 1976, PetroEcuador acquired Gulf's interest, thereby obtaining a majority stake. TexPet continued to operate the Trans-Ecuadoran Pipeline—a Consortium enterprise—until October 1989, when PetroEcuador assumed that responsibility. TexPet continued to operate the Consortium's drilling operations until July 1990, when PetroEcuador also took over that function. Finally, in June 1992, TexPet surrendered all its interests in the Consortium, leaving it wholly owned by PetroEcuador.

amounts of testimony with interpreters, perhaps often in local dialects, would make effective adjudication in New York problematic at best." *Id.* at *2. However, he stated, any dismissal on this ground would be contingent on Texaco's first agreeing to submit to personal jurisdiction in the courts of Ecuador. The Court further suggested that even if Texaco filed such a stipulation, the Court might retain jurisdiction over the injunctive portions of the action.

The Court also reserved decision as to dismissal on the basis of international comity, but noted that there appeared to be no conflict between the laws of Ecuador and the United States. Finally, the Court declined to consider dismissal for failure to join Ecuador and PetroEcuador, reasoning that the parties had yet to develop a sufficient record.

### 4. District Court's Grant of Texaco's Motion to Dismiss

Following Judge Broderick's death, the case was reassigned, ultimately to Judge Rakoff. After a significant period of discovery, Texaco renewed its motion to dismiss. Counsel for the Republic submitted an amicus brief, supporting Texaco's motion to dismiss, once again informing the Court that the Republic objected to United States jurisdiction over the case. That brief was accompanied by an affidavit to the same effect signed by Ambassador Teran, again expressing the Republic's position.

In response, the plaintiffs submitted three documents signed by representatives of the Ecuadoran National Congress, indicating their support for the plaintiffs' action. In one, the President of the Congress and four committee "presidents" wrote to Ecuador's President and Foreign Minister expressing their "concern" over the position that Ambassador Teran had taken. They stated that "[i]n our judgment the Ecuadorian government should not intervene in the development of this trial, much less show bias openly in a way that benefits the interests of the Texaco company." In the second document, Dr. Isauro Puente Dávila, a legislator who

served as the President of the Special Permanent Commission on Environmental Defense, issued an "official announcement" that

> only the adjudication of jurisdiction in the claim filed by Ecuadorians ... in a federal court of N.Y. against the Texaco Company, will bring to those affected the possibility of finding just treatment and a solution to the serious situation that they are going through....

In the third document, Dr. Puente wrote Judge Rakoff and enclosed a resolution of the Special Permanent Commission on Environmental Defense supporting the litigation. This resolution was stamped with the seal of the "General Secretaryship of the National Congress."

In November 1996, the District Court granted Texaco's motion to dismiss, as it related to the *Aguinda* plaintiffs. *See Aquinda* [5] *v. Texaco, Inc.,* 945 F.Supp. 625 (S.D.N.Y.1996). Judge Rakoff stated that he found persuasive the forum non conveniens and international comity holdings made by the Southern District of Texas in the *Sequihua* litigation. *See Sequihua v. Texaco, Inc.,* 847 F.Supp. 61 (S.D.Tex.1994). "[T]he Court finds itself obliged to dismiss this action on the same grounds of international comity and forum non conveniens so well stated in *Sequihua,* to which this Court can add little." *Aquinda,* 945 F.Supp. at 627.

The Court also dismissed for the "independently-sufficient reason" of failure to join indispensable parties, namely, PetroEcuador and the Republic of Ecuador. *See id.* Judge Rakoff reasoned that without these parties, it would be impossible to achieve the extensive equitable relief sought by the plaintiffs:

> In the absence of Petroecuador and the Republic of Ecuador, any order of this Court granting any material part of the Ecuador-directed equitable relief demanded by plaintiffs would be unenforceable on its face, prejudicial to both present and absent parties, and an open invitation to an international political debacle.

*Id.* at 628.

Judgment was entered in the *Aguinda* case on November 13, 1996. The Court di-

---

**5.** The caption of this order incorrectly spells the plaintiffs' name "Aquinda," instead of "Aguinda."

rected the parties in the *Ashanga* case to submit memoranda of law as to whether that case should be controlled by the dismissal in *Aguinda.*

5. District Court's Denial of Motions (i) to Reconsider Judgment and (ii) to Intervene

The plaintiffs in the *Aguinda* action moved for reconsideration, representing that the Republic was now willing to participate in that action as an intervenor. Thereafter, the Republic filed a motion to intervene. In an affidavit accompanying that motion, Ecuador's Attorney General stated that he was "summariz[ing] the official judicial position of the Republic of Ecuador," and concluded that

[t]he intervention ... does not under any concept damage the sovereignty of the Republic of Ecuador, instead it looks to protect the interests of the indigenous citizens of the Ecuadorian Amazon who were seriously affected by the environmental contamination attributed to the defendant company. . . .

In March 1997, the District Court ruled that the Republic's motion to intervene was not sufficiently precise. Plaintiffs' counsel had represented that due to an Ecuadoran election, and a subsequent change of administration, the Republic was now willing to waive sovereign immunity and consent to the jurisdiction of the District Court. However, the Court ruled, the intervention motion filed by the Republic had not "expressly and unequivocally state[d] that [it] was prepared to waive sovereign immunity." The Court requested that the Republic

provide fresh written assurances ... that the Republic of Ecuador, if it still desires to intervene in this law suit, is expressly prepared to waive sovereign immunity and submit fully to the jurisdiction of this Court (including jurisdiction over any counterclaims and cross-claims that may be filed against Ecuador in connection with this action).

In response, the Attorney General of Ecuador again wrote the District Court, but stopped short of agreeing to the conditions required by the Court. The Attorney General explained that "Ecuador ratifies it[s] par-

ticipation in this lawsuit in support of said persons in order to procure the necessary indemnization in order to alleviate the environmental damages caused by Texaco." While the Attorney General agreed, somewhat obliquely, to "allot the entire value of the indemnization to the projects and works of remediation which might be necessary," he made clear that the Republic did not agree to waive its sovereign immunity defense as to any claims made by parties other than the *Aguinda* plaintiffs. Thus, the Republic appeared unwilling to defend claims presented either by Texaco or by the *Ashanga* plaintiffs.

In August 1997, the District Court denied both the *Aguinda* plaintiffs' motion for reconsideration and the Republic's motion to intervene. *See Aquinda v. Texaco, Inc.,* 175 F.R.D. 50 (S.D.N.Y.1997). The Court characterized the Republic's motion as "patently, and prejudicially, untimely." *Id.* at 51. In Judge Rakoff's view, Ecuador had not shown any reason why the Court should consider its post-judgment change of position in now supporting the Court's jurisdiction over the case. Additionally, the Court ruled that Ecuador was not entitled to place limitations on its participation in the case, and would have to be willing to subject itself to possible counterclaims and cross-claims in order to intervene.

Thereafter, on August 13, 1997, the Court entered judgment dismissing the complaint in the *Ashanga* case.

### Discussion

The *Aguinda* and *Ashanga* plaintiffs appeal from the dismissal of their complaints, and the *Aguinda* plaintiffs also appeal from the denial of their motion for reconsideration. The Republic of Ecuador appeals from the denial of its motion to intervene. The plaintiffs-appellants challenge each of the three grounds on which the District Court dismissed their action: (1) forum non conveniens, (2) international comity, and (3) failure to join an indispensable party.

1. Forum Non Conveniens

■ The forum non conveniens doctrine allows dismissal only where the court deter-

mines that "an alternative forum is available, because application of the doctrine 'presupposes at least two forums in which the defendant is amenable to process.'" *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292 (2d Cir.1996) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). "Through a discretionary inquiry, the court determines where litigation will be most convenient and will serve the ends of justice." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998). "[I]n order to grant a motion to dismiss for forum non conveniens, a court must satisfy itself [among other things] that the litigation may be conducted elsewhere against all defendants." *Id.*

 The District Court incorporated the forum non conveniens holding of *Sequihua*, and appellants contend that *Sequihua* was inapposite. In particular, the appellants argue that the only defendant in the present case, Texaco, is not subject to suit in Ecuador. Texaco's only response is that TexPet is subject to suit in Ecuadoran courts, and is both a defendant and a plaintiff in various actions currently pending in that jurisdiction. But Texaco does not dispute that Texaco itself is not amenable to suit in Ecuador.

Accordingly, dismissal for forum non conveniens is not appropriate, at least absent a commitment by Texaco to submit to the jurisdiction of the Ecuadoran courts for purposes of this action. *Cf. In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 203–04 (2d Cir.1987) (affirming dismissal for forum non conveniens. that was conditioned upon defendant's consent to personal jurisdiction in India; such conditions "are not unusual and have been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition").

 On remand, in addition to requiring Texaco's consent to Ecuadoran jurisdiction,

the District Court should independently reweigh the factors relevant to a forum non conveniens dismissal, rather than simply rely on *Sequihua*. The plaintiffs have identified several distinctions between that case and the present one. In particular, they argue that the instant case involves a claim pursuant to the ATA, and that to dismiss the present case would frustrate Congress's intent to provide a federal forum for aliens suing domestic entities for violation of the law of nations.[6] Additionally, the plaintiffs argue that they—unlike the *Sequihua* plaintiffs—are challenging only decisions made by Texaco *within the United States*, and that the necessary documents and witnesses are thus much more readily accessible in a United States forum. Though we express no view on these distinctions, the District Court should consider them upon reconsideration of the forum non conveniens issue. We leave to the District Court the procedural decision as to whether (i) to initially ascertain Texaco's willingness to submit to jurisdiction in Ecuador and, if such willingness is indicated, then balance the forum non conveniens factors, *cf. Panama Processes, S.A. v. Cities Service Co.*, 650 F.2d 408, 411 (2d Cir.1981) (defendant offered to submit to foreign jurisdiction before court assessed forum non conveniens factors) or (ii) to make the balance first and, if the factors favor a forum non conveniens dismissal, condition such dismissal on Texaco's submission to jurisdiction in Ecuador.

### 2. Comity

 International comity is "'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir.1997) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). Under the principles of comity, United States courts "ordinarily re-

---

**6.** We express no view on whether the plaintiffs have alleged conduct by Texaco that violates the law of nations, whether an ATA suit for environmental misconduct, alleged to violate the law of nations, may be brought against a non-governmental entity under the ATA, or how the forum non conveniens balance for ATA claims is to be struck when alien plaintiffs select a United States

forum for a suit against a domestic corporation. *Cf. Kadic v. Karadzic*, 70 F.3d 232, 241–44, 250 (2d Cir.1995) (upholding jurisdiction over ATA claim against individual for alleged violations of law of nations involving genocide, war crimes, and violations of humanitarian law, and rejecting forum non conveniens defense in suit against individual alien).

fuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." *Id.* This doctrine "is best understood as a guide where the issues to be resolved are entangled in international relations." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1047 (2d Cir.1996). The District Court's dismissal on the ground of international comity is reviewed for abuse of discretion. *See Pravin*, 109 F.3d at 856.

In dismissing the complaints in this litigation on the ground of comity, the District Court explicitly adopted the comity considerations articulated by the District Court in *Sequihua* in dismissing a similar case. *See Sequihua*, 847 F.Supp. at 63. Applying the factors set forth in Restatement (3d) of Foreign Relations § 403 (1986), the Court in *Sequihua* had concluded that "the challenged activity and the alleged harm occurred entirely in Ecuador"; that the conduct at issue was regulated by the Republic and "exercise of jurisdiction by this Court would interfere with Ecuador's sovereign right to control its own environment and resources"; and that "the Republic of Ecuador has expressed its strenuous objections to the exercise of jurisdiction by this Court." *Id.*

■ When a court dismisses on the ground of comity, it should normally consider whether an adequate forum exists in the objecting nation and whether the defendant sought to be sued in the United States forum is subject to or has consented to the assertion of jurisdiction against it in the foreign forum. That is the approach usually taken with a dismissal on the ground of forum non conveniens, as we noted in Part 1, and it is equally pertinent to dismissal on the ground of comity. Though extreme cases might be imagined where a foreign sovereign's interests were so legitimately affronted by the conduct of litigation in a United States forum that dismissal is warranted without regard to the defendant's amenability to suit in an adequate foreign forum, this case presents no such circumstances.

With the comity issue remanded for lack of conditioning dismissal on Texaco's consent to jurisdiction in Ecuador, it will then be appropriate for the District Court to reconsider the merits of the comity issue in light of Ecuador's changed litigating position. When the District Court dismissed on the ground of comity in reliance on the *Sequihua* decision, that decision was almost directly on point. Most significantly, the Republic had repeatedly written the District Court arguing that this case implicated Ecuador's sovereign interests and should not be decided in a United States court. When the Republic changed its position following the entry of judgment—not only embracing the District Court's jurisdiction, but agreeing to participate, at least to some extent—the District Court reconsidered only the Rule 19 basis for dismissal, but did not revisit its determination that comity provided an independently sufficient ground for dismissal. Yet at that point the relevance of *Sequihua*, on which the Court had entirely relied, had been substantially eroded.

Ecuador contends that dismissal on the ground of comity is not warranted because it now supports the litigation of this lawsuit in a United States forum, contrary to its earlier opposition. The extent to which a court should consider the changed position of a sovereign nation in a case in which direct review has not been completed is an issue rarely encountered. Competing considerations are implicated. On the one hand, the interests in the orderly conduct of litigation and in the finality of judgments valid when rendered weigh in favor of holding a nation to the litigating position it asserted prior to the entry of judgment. On the other hand, inherent in the concept of comity is the desirability of having the courts of one nation accord deference to the official position of a foreign state, at least when that position is expressed on matters concerning actions of the foreign state taken within or with respect to its own territory. Of course, consideration of a nation's altered litigating stance cannot justify an altered outcome that would unduly prejudice a party that had acted in reliance on a judgment entered in light of the nation's original position or would result in a significant waste of judicial resources by renewing litigation fully tried.

This case does not require us to determine whether, or in what circumstances, we might remand a case, pending on direct review, solely because of a sovereign nation's altered litigating position.[7] This case must be remanded in any event because of our rulings with respect to the dismissal on the ground of forum non conveniens, comity, and failure to join an indispensable party. Upon remand, it will be appropriate for the District Court to give renewed consideration to the comity issue in light of all the then current circumstances, including Ecuador's position with regard to the maintenance of this litigation in a United States forum.

### 3. Failure to Join Indispensable Party

■ The appellants contend that the Republic is not an indispensable party, or alternatively, that the Republic's motion to intervene should have been granted, thus leaving no indispensable party omitted. We review dismissal for failure to join an indispensable party under the abuse of discretion standard. *See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984); Fed. R.Civ.P. 19(b) (authorizing district court to "determine whether in equity and good conscience" the action should be dismissed for inability to join indispensable party).

#### a. Dismissal Under Rule 19

■ The District Court dismissed the complaint under Rule 19(b) on the ground that the Republic's participation was necessary to afford the plaintiffs the full scope of the equitable relief they sought. The plaintiffs argue that this rationale sufficed, at most, to allow the dismissal of certain equitable claims requiring the Republic's participation, and that, under this rationale, the District Court should have allowed the legal claims and the remaining equitable claims to stand. We agree.

Rule 19(a), captioned "Persons to be Joined if Feasible," requires the District Court to join a person who is subject to service of process and the jurisdiction of the Court

> if (1) in the person's absence *complete relief* cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a) (emphasis added).

In this case, the District Court reasoned that in the absence of the Republic, the plaintiffs would not be able to obtain "complete relief," since their desired equitable relief would require enjoining the Republic (the current owner and operator of the oil drilling equipment). The Court then explained that dismissal was appropriate under Rule 19(b) because, in the absence of the Republic, "any order of this Court granting *any material part of the Ecuador-directed equitable relief* sought by the plaintiffs would be unenforceable on its face, prejudicial to both present and absent parties, and an open invitation to an international political debacle." *Aquinda*, 945 F.Supp. at 628 (emphasis added). In effect, the Court dismissed the case because the "Ecuador-directed" equitable remedies sought by the plaintiffs would be possible only if Ecuador was joined as a party and, without Ecuador in the case, the Court would be unable to provide the plaintiffs with "complete relief."

---

**7.** In somewhat analogous circumstances, the Supreme Court has permitted reconsideration in light of a changed position by the Solicitor General, presenting the views of the United States, *see Department of the Interior v. South Dakota*, 519 U.S. 919, 117 S.Ct. 286, 136 L.Ed.2d 205 (1996) (remand for reconsideration by Secretary of Interior); *Schmidt v. Espy*, 513 U.S. 801, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994) (remand for reconsideration by court of appeals), or a changed

position by an administrative agency, *see Lawrence v. Chater*, 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (remand for reconsideration by court of appeals); *cf. Landgraf v. USI Film Products*, 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (appellate court, on direct review, will apply new law in effect at time of decision); *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (same).

Rule 19(a) requires the Court to join any person who is necessary to effect "complete relief," where such joinder is feasible. But Rule 19(b) does not authorize dismissal simply because such a party cannot be joined. Instead, the Court is to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." Fed.R.Civ.P. 19(b). And in making this determination, the Court is to consider, among other things, "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." *Id.* Among the Court's options is to "order a pleading amended ... when by restructuring the relief requested plaintiff is able to change the status of an 'indispensable' party to that of merely a Rule 19(a) party or otherwise prevent the ill effects of nonjoinder." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1609, at 132–33 (2d ed.1986).

Since some aspects of the equitable relief sought by the plaintiffs would have required substantial participation by the Ecuadoran government, which at an earlier stage had resisted joinder, the District Court had discretion to dismiss some portions of the plaintiffs' complaint. But since much of the relief sought could be fully provided by Texaco without any participation by Ecuador, dismissal of the entire complaint on Rule 19 grounds exceeds that discretion. For example, an injunction might require Texaco to make good faith efforts to institute all, or at least portions, of the relief that the plaintiffs seek, an obligation the performance of which might not encounter any obstruction from Ecuador. A remand to reconsider the dismissal on Rule 19 grounds is required.

### b. Denial of Ecuador's Post–Judgment Motion to Intervene

The *Aguinda* plaintiffs and Ecuador contend that the District Court should have granted the Republic's post-judgment motion to intervene. Had the Court done so, they argue, it then should have reinstated all claims against Texaco, since Ecuador would no longer be an absent party.

The District Court denied Ecuador's motion to intervene on two grounds. First, the Court found that the motion was untimely and that granting late intervention would prejudice Texaco. Second, the Court ruled that Ecuador had not fully waived its sovereign immunity.

*Timeliness.* Prior to entry of judgment dismissing the *Aguinda* case, the Republic had repeatedly filed papers with the District Court contesting the Court's jurisdiction and seeking dismissal. Not until after the entry of judgment did the Republic express any degree of willingness to participate in the action. The Republic attempts to diminish the significance of this delayed change of position on two grounds. First, it points out, Judge Rakoff was on notice that there were conflicting opinions within the Ecuadoran Government over the propriety of participating in this lawsuit. Second, it argues, the Republic justifiably did not realize the need to intervene until Judge Rakoff had dismissed the action for failure to join an indispensable party. Both contentions are unavailing.

First, although the plaintiffs had submitted to Judge Rakoff various documents showing that Ecuadoran legislative committees—and possibly the Ecuadoran Congress as a whole—supported the litigation, the official position of the Ecuadoran Ambassador to the United States remained opposed to the litigation and especially to Ecuador's role in it. An ambassador generally has the power to "bind the state that he represents," *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda,* 877 F.2d 189, 192 (2d Cir.1989), unless he purports to enter into an agreement without the power to do so and in collusion with a contracting party that knows he lacks such power, *see id.* at 192, 193–94. To this point, the Republic responds that under Ecuadoran law, only the Attorney General is authorized to make representations on behalf of the Republic in a judicial proceeding. *See* Ecuador Const. art 139 ("The Attorney General will be the only judicial representative of the State ...."), *quoted in* Brief for Republic of

Ecuador at 9 n. 5. However, the quoted language seems best understood to make the Attorney General the sole representative of the state before the Ecuadoran judiciary, without disturbing the traditional authority of ambassadors to represent the state's position before foreign courts. In any event, Ambassador Teran enjoyed apparent authority, and Texaco and the District Court were entitled to rely on his representations unless they were actually aware that he lacked such authority. *See First Fidelity,* 877 F.2d at 193 n. 2, 194.

Second, the Republic is incorrect in maintaining that it had no reason to intervene until the Court's unexpected decision to treat it as an indispensable party. Though the Republic might not have expected the Court to grant the Rule 19 motion, this motion had been pending before the Court for months. The Republic does not claim that it was uninformed of the motion, only that it did not anticipate that the Court would grant it.

*Prejudice.* The District Court concluded that permitting late intervention would prejudice Texaco because it had previously settled with the Republic and "would now have to face the re-opening of this already very expensive and time-consuming litigation on the basis of claims alleged by the very party with which defendant had previously settled." *Aquinda,* 175 F.R.D. at 51. This articulation of prejudice somewhat overstates the situation. Ecuador contends that it is not seeking to intervene to present any renewed claims it might have against Texaco. It seeks only limited intervention to provide assistance to the plaintiffs in securing the equitable relief they are seeking.[8]

*Retention of sovereign immunity.* The District Court also held that the Republic's intervention motion was insufficient because it did not include a full waiver of sovereign immunity. In particular, the Court found that "the Republic attaches limitations and conditions to its proposed waiver of sovereign immunity such that it would retain all the benefits of a proper party plaintiff while not being required to assume all the correlative burdens." *Aquinda,* 175 F.R.D. at 51. We agree. The Court had explicitly advised Ecuador that its unqualified participation in the litigation would be required to enable it to intervene, and Ecuador elected not to fully relinquish its sovereign immunity.

*Reconsideration of motion to intervene.* Since the case is being remanded because of our rulings on forum non conveniens, comity, and indispensable party, Ecuador's motion to intervene will also be available for reconsideration. The motion will still be late, but it might not be prejudicially so. Furthermore, though Ecuador's previously asserted position on waiver of sovereign immunity justified the earlier denial of intervention, Ecuador will have the opportunity to revise its position if it is so inclined. Upon the resumption of litigation in the District Court, Ecuador should promptly advise the District Judge what would be its role and what claims it proposes to make if permitted to intervene, and whether it proposes to retain in the litigation any aspect of its sovereign immunity. The District Court should then reassess Ecuador's motion to intervene in the light of all the current circumstances.

### Conclusion

For the above stated reasons, we vacate the judgment of the District Court and remand for proceedings not inconsistent with this decision.

---

8. Texaco points out that, at some earlier point, the Republic presented a proposed complaint in intervention that asserted independent claims against Texaco. *See* Brief for Texaco at 24. However, Texaco also acknowledges that the District Court was informed by Ecuador's Attorney General, apparently at some subsequent time, that the Republic wished to intervene only to assist the plaintiffs in securing their equitable relief. *See id.*