Maria AGUINDA, Individually, and as guardians for Gesica Grefa, Carlos Grefa, Individually and as guardians for Gresica Grefa, Gesica Grefa, Catarina Aguinda, Mercedes Grefa, Lidia Aguinda; Patricio Chimbo, Individually and as guardian for his minor children, Elias Piyaguaje, Individually and as guardian for Lola Piyaguaje, Edicon Piyaguaje, Paulina Piyaguaje, Jimena Piyaguaje and Elias Piyaguaje, Lola Piyaguaje, Edison Piyaguaje, Paulina Piyaguaje, Jimena Piyaguaje, Elias Piyaguaje, Delfin Payaguajo, Individually and as guardian for his minor children, Homer Conde, Individually and as guardian for his minor children, Santo Guillermo Ramirez, Individually and as guardian for Danilo Ramirez, Danilo Ramirez, Juana Tanguila, Additional Plaintiff, Listed In Exhibits "B", "C" and "D" Hereto and Incorporated Herein by Reference., Individually and on behalf of all others similarly situated, Gabriel Ashanga Jota, individually and as Guardian for Raul Antonio Ashanga Casteno, Paula Nerida Ashanga Casteno, Christian Ashanga Casteno and Judith Reutegui Casteno, Manuel Antonio Canelos Duende, Alimpio Coquinche Noteno, Arsenio Condo, Juan Marcos Coquinche Mercier, Ronald Coquinche Noteno, indivudally and as Guardian for Tarcila Conquinche and Saul Coquinche, Santiago, individually and as Guardian for Julian Coquinche and Santiago Coquinche, Florentino Noteno, individually and as Guardian for Mery Noteno, Greine Noteno, Armilda Noteno and Noris Noteno, Remedia Paz Duende, individually and as Guardian for Lizzie Pena Paz and Jackie Pena Paz and on behalf of all others similarly situated, Associacion Internica De Desarrollo de la Selva Peruana—Aidesep, (Multi–Ethnic Association of the Development of the Peruvian Rainforest), in representation of its members and of its member organizations, Organizacion Kichuaruna wangurina—Orkiwan, (Organization Quichua Wangurina), Federacion de Comunidades Nativas Del Medio Napo—Feconamn, (Federation of Native Communities of the Middle Napo), Federacion del Pueblo Yagua del Bajo Amazona y Bajo Napo—Fepybaban (Federation of the Yagua People of the Lower Amazon and Lower Napo), Federacion del Bajo Amazona y Bajo Napo–Fepybaban (Federation of the Yagua People of the Lower Amazon and Lower Napo), Plaintiffs–Appellants,

v.

TEXACO, INC., 2000 Westchester Avenue, White Plains, New York 10650, Defendant–Appellee.

Docket Nos. 01–7756L, 01–7758C.

United States Court of Appeals, Second Circuit.

Argued March 11, 2002.

Decided Aug. 16, 2002.

Cristóbal Bonifaz, Law Offices of Cristóbal Bonifaz (John C. Bonifaz, Steven Donziger on the brief), Amherst, MA; Sarah Altschuler, Tonya L. Putnam, Amherst, MA, law clerks; Joseph C. Kohn, Martin D'Urso, Craig Hillwig, Kohn Swift & Graf, Philadelphia, PA; Amy Damen, Sullivan & Damen, White Plains, NY; Arthur L. Berney, Boston College Law School, Newton, MA, on the brief, for Plaintiffs–Appellants.

Ronald C. Minkoff, Beldock Levine & Hoffman LLP, New York, NY; Jonathan S. Abady, Emery Cuti Brinckerhoff & Abady, P.C., New York, NY, on the brief, for the Republic of Ecuador, amicus curiae in support of Plaintiffs–Appellants.

J. Martin Wagner, EarthJustice Legal Defense Fund, San Francisco, CA, submitted a brief for amicus curiae the Sierra Club in support of Plaintiffs–Appellants.

Richard L. Herz, EarthRights International, Washington, DC, submitted a brief for amicus curiae EarthRights International in support of Plaintiffs–Appellants.

George S. Branch, King & Spalding (Daniel J. King, Richard T. Marooney, Jr., Jeanette M. Viggiano on the brief), Atlanta, GA and New York, NY, for Defendant–Appellee.

Before: CARDAMONE, LEVAL, and SOTOMAYOR, Circuit Judges.

LEVAL, Circuit Judge.

These are consolidated appeals from judgments of the United States District

Court for the Southern District of New York (Jed S. Rakoff, *Judge*) dismissing two putative class actions for *forum non conveniens*. Plaintiffs are residents of the Oriente region of Ecuador and an adjoining area in Peru. Defendant is Texaco, Inc. ("Texaco"), a United States-based oil company, which, at the pertinent time, was headquartered in New York. The complaints allege environmental and personal injuries arising out of Texaco's oil exploration and extraction operations in the Oriente region between 1964 and 1992.

We modify the judgments in one respect explained below, but otherwise affirm the dismissal of the actions by reason of *forum non conveniens*.

## BACKGROUND

The background of this case is described in detail in the decisions of the district court, *see Aquinda v. Texaco, Inc.*, 945 F.Supp. 625 (S.D.N.Y.1996); *Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534 (S.D.N.Y. 2001), and in our October 1998 opinion in the appeal from the district court's 1996 decision, *see Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir.1998). We briefly summarize the background as follows.

### A. Texaco's Oil Operations in Ecuador

In 1964, Texaco Petroleum Company ("TexPet"), a fourth-level subsidiary of the defendant Texaco, began oil exploration and drilling in the Oriente region of eastern Ecuador. In 1965 TexPet started operating a petroleum concession for a consortium (the "Consortium") owned in equal shares by TexPet and Gulf Oil Corporation. In 1974 the government of the Republic of Ecuador ("Republic" or "Ecuador"), through its state-owned oil agency known as PetroEcuador, obtained a 25 percent share in the Consortium. Within two years, PetroEcuador acquired Gulf Oil's interest and became the majority stakeholder in the Consortium. Through 1989 TexPet operated a Trans Ecuadorian oil pipeline, at which time PetroEcuador took over that function. TexPet operated the Consortium's drilling activities until July 1990, when PetroEcuador took over that responsibility as well. In June 1992, TexPet relinquished all its interests in the Consortium, leaving it owned entirely by PetroEcuador. *See Jota,* 157 F.3d at 155–56 & n. 4.

### B. Prior Proceedings and Proceedings Below

#### 1. The Complaints and Proceedings Before Judge Broderick

In November 1993, Ecuadorian plaintiffs filed the first of two class action lawsuits against Texaco in the Southern District of New York on behalf of some 30,000 inhabitants of the Oriente region. *See Aguinda v. Texaco, Inc.*, Dkt. No. 93 Civ. 7527 (S.D.N.Y. filed Nov. 3, 1993) ("*Aguinda* plaintiffs"). In December 1994, residents of Peru living downstream from Ecuador's Oriente area brought a separate class action against Texaco in the Southern District of New York on behalf of at least 25,000 residents of Peru. *See Jota v. Texaco, Inc.*, Dkt. No. 94 Civ. 9266 (S.D.N.Y. filed Dec. 28, 1994) ("*Jota* plaintiffs"). Both complaints alleged that between 1964 and 1992 Texaco's oil operation activities polluted the rain forests and rivers in Ecuador and Peru. The complaints alleged that Texaco's activities in Ecuador were "designed, controlled, conceived and directed ... through its operations in the United States."

The complaints sought money damages under theories of negligence, public and private nuisance, strict liability, medical monitoring, trespass, civil conspiracy, and violations of the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"). They also sought extensive equitable relief to redress contamination of the water supplies and environment, including: financing for envi-

ronmental cleanup to create access to potable water and hunting and fishing grounds; renovating or closing the Trans Ecuadorian Pipeline; creation of an environmental monitoring fund; establishing standards to govern future Texaco oil development; creation of a medical monitoring fund; an injunction restraining Texaco from entering into activities that risk environmental or human injuries, and restitution. *See Jota*, 157 F.3d at 156 n. 2.

Both cases were initially assigned to Judge Vincent Broderick. In December 1993, before the *Jota* action was filed, Texaco moved to dismiss the *Aquinda* complaint on grounds of 1) failure to join the Republic of Ecuador; 2) international comity; and 3) *forum non conveniens*. Along with this motion, Texaco submitted a letter from Ecuador's ambassador to the United States addressed to the U.S. Department of State, asserting that the Government of Ecuador considered the suit an affront to Ecuador's national sovereignty. While reserving decision, the district court stated that dismissal might be appropriate as to the money damages claims because "[d]isputes over class membership, determination of individualized or common damages, and the need for large amounts of testimony with interpreters, perhaps often in local dialects, would make effective adjudication in New York problematic at best." *Aquinda v. Texaco, Inc.*, No. 93 Civ. 7527, 1994 WL 142006, at *2 (S.D.N.Y. Apr. 11, 1994). The court specified, however, that any dismissal on *forum non conveniens* grounds would be conditioned upon Texaco's consent to jurisdiction in Ecuador. Concluding that dismissal was premature, the court ordered discovery as to whether Texaco in fact directed activities in Ecuador from the United States and whether extensive evidence from Ecuador would be necessary to prove plaintiffs' claims. *Id.* at *3–4.

2. Proceedings Before Judge Rakoff

After Judge Broderick's death in March 1995, the cases were reassigned, ultimately to Judge Rakoff. Following discovery, in November 1996 Judge Rakoff granted Texaco's motion to dismiss the *Aquinda* suit on grounds of *forum non conveniens* and international comity. *See Aquinda*, 945 F.Supp. at 627–28. The court also justified dismissal by reason of the failure to join PetroEcuador and the Republic of Ecuador, on the theory that they were indispensable parties because their absence would make it impossible for the court to order the extensive equitable relief sought by plaintiffs. *Id.* at 627. The court found that the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603(b) and 1604 prevented the assertion of jurisdiction over either. Finally, the court ordered the *Jota* plaintiffs to show cause why their case should not be controlled by the *Aquinda* dismissal. *Id.* at 628.

The Republic of Ecuador then filed a motion to intervene on behalf of the plaintiffs, and submitted the affidavit of Ecuador's Attorney General stating that the Republic sought "to protect the interests of the indigenous citizens of the Ecuadorian Amazon who were seriously affected by the environmental contamination attributed to the defendant company." *Jota*, 157 F.3d at 158. The district court found that in making the motion the Republic did not express willingness to waive its sovereign immunity. The Ecuadorian Attorney General responded that the Republic ratified "it[s] participation in this lawsuit ... to procure the necessary indemnization in order to alleviate the environmental damages caused by Texaco," *id.* (first alteration in original), but refused to waive the Republic's sovereign immunity as to any claims made by the *Jota* plaintiffs or counterclaims asserted by Texaco. The *Aquinda* plaintiffs also had requested reconsid-

eration of the court's prior dismissal. The district court denied both the *Aquinda* plaintiffs' motion for reconsideration and the Republic's motion to intervene. *See Aquinda v. Texaco, Inc.*, 175 F.R.D. 50 (S.D.N.Y.1997). Shortly thereafter, the court dismissed the *Jota* complaint as well.

3. Plaintiffs' First Appeal

On appeal, this court vacated the dismissal and remanded for reconsideration. We ruled that *forum non conveniens* dismissal was inappropriate, "at least absent a commitment by Texaco to submit to the jurisdiction of the Ecuadorian courts...." *Jota*, 157 F.3d at 159. We instructed the district court to "independently reweigh the factors relevant to a forum non conveniens dismissal, rather than simply rely" on the reasoning of *Sequihua v. Texaco, Inc.*, 847 F.Supp. 61 (S.D.Tex.1994). *Jota*, 157 F.3d at 159. As to comity, we advised the district court to weigh the same considerations as with respect to *forum non conveniens*, and to reexamine the issue "in light of all the then current circumstances, including Ecuador's position with regard to the maintenance of this litigation" in the United States. *Id.* at 160–61. We also ruled that the district court's "reasoning regarding the plaintiffs' failure to join an indispensable party sufficed only to support dismissing so much of the complaint as sought to enjoin activities currently under the Republic's control." *Id.* at 155. Regarding Ecuador's post-judgment motion to intervene, we agreed with the district court that Ecuador's motion was untimely and insufficient to waive sovereign immunity. *Id.* at 162–63.

4. Events Following Remand

Following our decision, Ecuador's ambassador to the United States informed the district court that the Republic "is not willing, under any circumstance, to waive its sovereign immunity and be subject to rulings by Courts in the United States....

Therefore, the intervention of the Republic of Ecuador as a party is not necessary." Ecuador's attorney general agreed to the same view in a separately submitted declaration, stating that Ecuador "will accept any decision of the U.S. courts as to whether they have jurisdiction over the matter or not, ... [b]ut the Republic will not accept or agree in any manner to become or be treated as a party to the Lawsuit."

Texaco consented to personal jurisdiction in Ecuador as to the *Aquinda* plaintiffs and in Peru or Ecuador as to the *Jota* plaintiffs. Texaco stipulated it would waive its statute of limitations defenses that matured during the period of time between the filing of the complaint and the 60th day after the dismissal of the action by the district court. It preserved such defenses, however, with respect to the passage of time prior to the initial filing of the complaints. It also offered to stipulate that plaintiffs could utilize the discovery obtained thus far in resumed proceedings in Ecuador or Peru. Texaco then renewed its motion to dismiss by reason of *forum non conveniens*.

5. Judge Rakoff's Second Dismissal of Plaintiffs' Complaints

The district court deferred ruling on Texaco's motion to dismiss "in order to give plaintiffs the chance to reopen an issue they had previously abandoned, *i.e.*, whether the courts of Ecuador (and/or) Peru are sufficiently independent and impartial to provide" due process. After briefing on this issue was completed, plaintiffs moved to disqualify Judge Rakoff. Judge Rakoff denied the motion, *see Aquinda v. Texaco, Inc.*, 139 F.Supp.2d 438 (S.D.N.Y.2000), and we denied plaintiffs' subsequent petition for a writ of mandamus, *see In re Aguinda*, 241 F.3d 194 (2d Cir.2001).

On May 30, 2001, the district court granted Texaco's motions to dismiss the *Aquinda* and *Jota* complaints. *See Aguinda*, 142 F.Supp.2d at 554. The court ruled that Texaco had demonstrated the availability of an adequate alternative forum and that the ordinarily strong presumption favoring the plaintiffs' chosen forum was overcome by a balance of the relevant private and public interest factors tilting heavily in favor of the alternative forum. The district court underscored that Texaco had now consented to jurisdiction in Ecuadorian and Peruvian courts. The court rejected each of plaintiffs' objections to the adequacy of an Ecuadorian forum, which it found to be adequate for the *Jota* plaintiffs as well. Plaintiffs also contested the adequacy of Ecuador as a forum on the basis of a recent Ecuadorian statute, Law 55, which plaintiffs argued strips Ecuador's courts of concurrent jurisdiction over suits which have been filed first in a foreign forum. The court expressed doubt about plaintiffs' interpretation of Law 55, but qualified its dismissal, expressing willingness to reconsider if an Ecudorian court of last review were to uphold dismissal on grounds of Law 55. *See id.* at 538–52.

With regard to the private and public interests, the court found that "[t]hese cases have everything to do with Ecuador and nothing to do with the United States." *Id.* at 537. The court was not persuaded by plaintiffs' argument that the balance of public interests should be re-weighed in light of their claim under the Alien Tort Claims Act. It concluded: 1) the conventional doctrine of *forum non conveniens* "applies in undiminished fashion" to ATCA claims, *id.* at 554 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 104–06 (2d Cir.2000)); 2) because environmental torts are unlikely to be found to violate the law of nations, plaintiffs' ATCA claim is unlikely to survive dismissal; 3) the United States has no special public interest in hosting an international law action against a U.S. entity that can be adequately pursued in the place where the violation actually occurred; and 4) the ATCA does not compel providing a U.S. forum when an adequate and more convenient foreign forum exists. *See id.* at 552–53.

This appeal followed.

## DISCUSSION

Plaintiffs contend that the district court abused its discretion in determining that Ecuador was an adequate alternative forum and that the balance of private and public interest factors tilted in favor of dismissal. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir.2001) (en banc). Finding no abuse of discretion, we affirm with modification.

▆▆▆ After determining the degree of deference owed to a plaintiff's choice of forum, a district court engages in a two-step inquiry. First, the court must consider whether an adequate alternative forum exists. If so, it must "then balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa*, 226 F.3d at 100; *see also Iragorri*, 274 F.3d at 73. The defendant seeking dismissal bears the burden as to both questions. *Wiwa*, 226 F.3d at 100. After assuming a strong presumption of validity for plaintiffs' choice of forum, the district court found that the presumption was overcome by the balance of public and private interest factors.

### A. Does an Adequate Alternative Forum Exist?

▆▆▆ Ordinarily, the requirement of an adequate alternative forum "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. In rare circumstances, however, where the remedy

offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative...." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir.2000) ("[A]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy th[e] [alternative forum] requirement."), *vacated on other grounds,* 294 F.3d 21 (2d Cir.2002). Plaintiffs raise several objections to the availability and adequacy of an Ecuadorian forum.[1]

Plaintiffs contend first that Ecuador does not offer an alternative forum because Law 55 precludes them from proceeding in Ecuadorian courts. Law 55 provides, "[S]hould the lawsuit be filed outside Ecuadorian territory, this will definitely terminate national competency as well as any jurisdiction of Ecuadorian judges over the matter." Plaintiffs argue that Law 55 deprives Ecuadorian courts of competency to assert jurisdiction because both suits were first filed in the United States. They contend that dismissal for *forum non conveniens* would leave them without a forum in which to proceed. We agree with the district court's skepticism as to the law's retroactivity, as well as its application to cases dismissed for *forum non conveniens.* We note furthermore

that following oral argument the parties submitted to us an April 30, 2002 decision of the Ecuadorian Constitutional Court declaring Law 55 unconstitutional. We need not determine the scope of Law 55, as the district court qualified its dismissal specifying that, in the event the cases were dismissed in Ecuador under Law 55 and this result were affirmed by Ecuador's highest court, it would be open to reconsider the question.[2] *But see Bank of Credit and Commerce Int'l v. State Bank of Pak.,* 273 F.3d 241, 248 (2d Cir.2001) (suggesting that the degree of protection that must be afforded by a conditional dismissal on *forum non conveniens* grounds will vary depending on how certain the court is that, under unsettled foreign law, the foreign forum will be available).

We find no merit in plaintiffs' further argument that Ecuadorian courts are unreceptive to tort claims. The record shows that several plaintiffs have recovered judgments against TexPet and PetroEcuador for claims arising out of the very facts here alleged. Other U.S. courts have found Ecuador to be an adequate forum for hosting tort suits. *See, e.g., Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1359–60 (S.D.Tex.1995) (Ecuador adequate to host mass tort suit for pesticide exposure); *Ciba–Geigy Ltd. v. Fish Peddler, Inc.,* 691 So.2d 1111, 1117 (Fla.Dist.Ct.App.1997)

---

1. The district court's assessment of an alternative forum focused primarily on Ecuador. As to Peru, the court observed that "[w]hile [it] has been presented with less information on which to assess the adequacy of the Peruvian courts, ... the Ecuadorian courts provide in any event an adequate forum in which the Peruvian plaintiffs here can bring their claims. The Peruvian forum, therefore, is simply an alternative option that the Peruvian plaintiffs may, if they wish, elect." *Aguinda,* 142 F.Supp.2d at 546. The district court considered plaintiffs' claim that Ecuadorian courts are biased against Peruvians, but dismissed the objection because plaintiffs could "adduce no competent evidence of this allega-

tion but simply make reference to the border dispute between the two countries that was settled in 1998." *Id.* at 546 n. 3. As neither party on appeal concentrates attention on Peru as an alternative opinion, we limit our analysis to Ecuador and conclude that it is a suitable forum for both sets of plaintiffs.

2. Plaintiffs make a similar argument with respect to Ecuador's Code of Civil Procedure Article 15, which provides that "the judge ... who summons the defendant first, acquires exclusive jurisdiction." Plaintiffs did not raise this issue below, and, in any event, we find the argument to be without merit.

(finding Ecuadorian forum adequate for hosting suit for fungicide exposure). In addition, Texaco has offered unrebutted evidence of other types of successful tort claims brought in Ecuadorian courts, including personal injury claims by Ecuadorian oilfield workers against TexPet.

Plaintiffs' contention is predicated on the absence of tort actions on the docket of Ecuador's Supreme Court. Given Texaco's showing that tort judgments are awarded by Ecuador's courts, their absence from the docket of the Supreme Court of Ecuador appears to be of little significance.

Plaintiffs' third objection is that Ecuadorian courts do not recognize class actions. On the other hand, Ecuador permits litigants with similar causes of action arising out of the same facts to join together in a single lawsuit. While the need for thousands of individual plaintiffs to authorize the action in their names is more burdensome than having them represented by a representative in a class action, it is not so burdensome as to deprive the plaintiffs of an effective alternative forum. *Cf. Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993) ("[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.").

Plaintiffs point further to several respects in which Ecuadorian procedure is less efficient than U.S. procedure. While Ecuador's judicial procedures may be less streamlined than ours, that does not make Ecuador's procedures ineffective or render Ecuador inadequate as an alternative forum. *See id.,* 997 F.2d at 982; *DiRienzo,* 232 F.3d at 58–59.

Plaintiffs contend that Ecuadorian courts are subject to corrupt influences and are incapable of acting impartially. After ordering supplemental briefing on this question, Judge Rakoff made detailed findings. He found: 1) no evidence of impropriety by Texaco or any past member of the Consortium in any prior judicial proceeding in Ecuador; 2) there are presently pending in Ecuador's courts numerous cases against multinational corporations without any evidence of corruption; 3) Ecuador has recently taken significant steps to further the independence of its judiciary; 4) the State Department's general description of Ecuador's judiciary as politicized applies primarily to cases of confrontations between the police and political protestors; 5) numerous U.S. courts have found Ecuador adequate for the resolution of civil disputes involving U.S. companies; and 6) because these cases will be the subject of close public and political scrutiny, as confirmed by the Republic's involvement in the litigation, there is little chance of undue influence being applied. *See Aguinda,* 142 F.Supp.2d at 544–46. We cannot say that these findings were an abuse of discretion. *See Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1313 n. 3 (11th Cir .2001).

■ Finally, plaintiffs challenge the district court's allowance of only 60 days for the assertion of plaintiffs' claims in Ecuador exempt from claims of preclusion. We agree with this objection. In the district court, timely claims were brought on behalf of nearly 55,000 plaintiffs. In Ecuador, because class action procedures are not recognized, signed authorizations would need to be obtained for each individual plaintiff. This presents a formidable administrative task for which we believe 60 days is inadequate time. We therefore direct the district court to modify its ruling to make dismissal conditioned on Texaco's agreeing to waive any defense based on a statute of limitations for limitation periods expiring between the date of filing these United States actions and one year (rather

than 60 days) following the dismissal of these actions.

## B. Balancing Private and Public Interest Factors

■ Having demonstrated the availability of an adequate alternative forum, Texaco must next establish that the balance of private and public interest factors "tilt[s] strongly in favor of trial in the foreign forum." *Wiwa*, 226 F.3d at 100.

### 1. *Private Interest Factors*

■ Private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). We find no abuse of discretion in the district court's conclusion that these interests "weigh heavily" in favor of an Ecuadorian forum. The relative ease of access to sources of proof favors proceeding in Ecuador. All plaintiffs, as well as members of their putative classes, live in Ecuador or Peru. Plaintiffs sustained their injuries in Ecuador and Peru, and their relevant medical and property records are located there. Also located in Ecuador are the records of decisions taken by the Consortium, along with evidence of Texaco's defenses implicating the roles of PetroEcuador and the Republic. By contrast, plaintiffs have failed to establish that the parent Texaco made decisions regarding oil operations in Ecuador or that evidence of any such decisions is located in the U.S.

If these cases proceeded to trial, it would be onerous for a New York court to manage the translation difficulties arising from cases with 55,000 putative class members of different indigenous groups speaking various dialects. In addition, it would be far more feasible for an Ecuadorian court to view the polluted areas in question than for a New York court to do so. We also find significant that the Republic and PetroEcuador, neither of which are parties to the current suits, could be joined if the cases were resumed in Ecuador. *See Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. 252 (noting that "inability to implead potential third-party defendants" supports holding trial in Scotland). We agree with the district court's observation that in the absence of the Ecuadorian Republic as a party, a U.S. court would be incapable of effectively ordering several aspects of the equitable relief sought in the complaints.

To the extent that evidence exists within the U.S., plaintiffs' concerns are partially addressed by Texaco's stipulation to allow use of the discovery already obtained. Furthermore, Texaco's counsel agreed at oral argument that Texaco would not oppose further discovery in Ecuador that would otherwise be available in the U.S.

Finally, plaintiffs raise two additional practical concerns: 1) They contend the filing fee for any civil action in Ecuador is cost prohibitive for plaintiffs, many of whom are low-income subsistence farmers; and 2) there is currently a travel advisory by the U.S. State Department for the Ecuadorian province of Sucumbios, where plaintiffs assert trial would be held. It is sufficient answer that these contentions need not be recognized when raised for the first time on appeal. In addition, however, plaintiffs acknowledge the passage of new law in Ecuador whereby filing fees for indigent persons are reduced to a minimal level. With regard to the travel advisory, plaintiffs have given no explanation as to why litigation must be conducted in the Sucumbios province.

## 2. Public Interest Factors

■ Public interest considerations include administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839. The district court was within its discretion in concluding that the public interest factors tilt in favor of dismissal.[3]

We conclude that the district court was within its discretion in dismissing the actions on the basis of *forum non conveniens*.[4]

### CONCLUSION

The district court's judgment dismissing for *forum non conveniens* is AFFIRMED, subject to the modification that the judgment be conditioned on Texaco's agreement to waive defenses based on statutes of limitation for limitation periods expiring between the institution of these actions and a date one year subsequent to the final judgment of dismissal.

---

3. Plaintiffs contend we should interpret the ATCA to encompass their environmental claim, *cf. Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 167 (5th Cir.1999), and to express, like the Torture Victims Protection Act, a strong U.S. policy interest in providing a forum for the adjudication of such claims. *Compare Wiwa*, 226 F.3d at 105. We have no need to pass on either question. Even if we were to accept plaintiffs' view of the law on both questions, the private and public interest factors that affect this case would nonetheless require that we affirm the district court's judgment.

4. Plaintiffs also cursorily argue that international comity considerations militate against dismissal and that Judge Rakoff should have recused himself. We have considered both claims and find them to be without merit.