Pat GROSS, Plaintiff–Appellant,

v.

**BRITISH BROADCASTING CORPORATION, Defendant–Appellee,**

Twenty Twenty Television, Ltd., Defendant.

No. 03–7306.

United States Court of Appeals, Second Circuit.

Argued May 3, 2004.

Decided Oct. 8, 2004.

Eamonn Dornan, New York, NY (Russell A. Smith, Smith Dornan & Shea P.C., New York, NY, of counsel), for Plaintiff–Appellant.

Laura R. Handman, New York, NY (Peter Karanjia, Davis Wright Tremaine LLP, New York, New York, of counsel), for Defendant–Appellee British Broadcasting Corp.

\* Honorable Edward R. Korman, Chief Judge of the United States District Court for the East-

Before: CARDAMONE and JACOBS, Circuit Judges, and KORMAN, District Judge.*

CARDAMONE, Circuit Judge.

Plaintiff Pat Gross (plaintiff or appellant) filed suit against the defendant British Broadcasting Corporation (BBC) in which she alleges that without her permission the BBC used her idea for a documentary film about militant animal rights activists. Her complaint raises a number of legal theories, but at its core it alleges unjust enrichment and misappropriation of ideas. The BBC is a corporation existing under English law and established by Royal Charter with its principal office in London, England. The documentary about which Gross complains aired only in the United Kingdom (U.K.). She lives in New York City and chose to file the suit in her home forum, the United States District Court for the Southern District of New York where the case came before Judge Alvin Hellerstein. The BBC has a presence in New York, and is unquestionably subject to personal jurisdiction in the Southern District. The district court nevertheless decided that courts in Great Britain were a more appropriate forum for the trial of this action. Accordingly, in a judgment entered February 26, 2003 it granted the BBC's motion to dismiss plaintiff's complaint on the ground of *forum non conveniens*. Plaintiff timely appeals the dismissal of her suit.

It is not uncommon for more than one forum to have jurisdiction to hear a case. Under our legal system, plaintiffs make the initial selection of their preferred venue by filing the suit in a particular forum. We have consistently held that when the plaintiff is a U.S. citizen and she selects her home forum, that choice is ordinarily

ern District of New York, sitting by designation.

entitled to substantial deference from the courts, especially when there is no challenge regarding the legitimacy of the plaintiff's motives for choosing her home forum.

The common law doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when the convenience of the parties and the interests of justice indicate a foreign forum would be the more appropriate forum. But, because of the substantial deference to a U.S. citizen's choice of her home forum, the balance of interests must strongly favor the defendant to justify dismissal of plaintiff's complaint on such grounds. District courts have discretion to determine whether the interests of justice favor dismissal for *forum non conveniens*, yet that discretion is not unfettered. In this case, we think the district court's dismissal of plaintiff's suit was manifestly unreasonable and thus an abuse of discretion. We therefore vacate the order dismissing plaintiff's suit and remand to the district court for further proceedings.

## BACKGROUND

### A. *Facts Alleged in the Complaint*

When we review a case dismissed at the pleading stage, we accept as true the factual allegations set forth in the plaintiff's complaint. Pat Gross is an American citizen who has lived and worked in New York City for 22 years. She has 15 years experience in the U.S. television industry as a documentary filmmaker and has researched and produced numerous documentaries that have been broadcast by, among others, CBS, Court TV, and the Public Broadcasting System. She has worked in the industry as a producer, director, researcher and screenwriter. In 1998 she conceived the idea for a documentary-style TV series on the history of the modern animal rights movement and the extremist activities of some of its members in America and Europe. In November of that year she approached the BBC with her research and ideas, having already produced several documentaries for defendant earlier. According to her affidavit, plaintiff entitled the series "Beastly Business." Plaintiff planned to focus on exposing extremist activities and demonstrating how powerful international organizations have exploited animal welfare for profit.

The BBC is a major television broadcaster based in London and is a non-profit corporation organized under English law. The BBC broadcasts a broad array of programming to the British public and its services are publicly funded by the British government. Thus Gross traveled to London in November 1998 to present her proposal to the BBC. She spoke to several executives there who expressed interest in her project.

While in London, Gross was referred to an executive producer at defendant Twenty Twenty Television, Ltd. (Twenty Twenty), an independent production company, organized under English law, and with its principal place of business in England. Twenty Twenty produces documentaries that have been broadcast in both England and the United States. Plaintiff discussed her proposal with that company's executives, and they jointly agreed that Twenty Twenty would co-produce the documentary, although Gross would continue to be responsible for selling the proposal to the BBC. Her agreement with Twenty Twenty provided that she would retain proprietary rights in the series, receive producer credits, produce and direct at least one episode, and participate at least as an assistant director on others. If the series were accepted by the BBC, Twenty Twenty would pay 40 percent of the up-front production costs, and receive production credit and compensation in return.

Together, plaintiff and Twenty Twenty developed a "Treatment"—essentially a summary and written pitch for the series—to present to the BBC. The Treatment referred to some of the research Gross had already completed on the project. She thought her proposal contained newsworthy information, and that some of the information she submitted was "time-sensitive and volatile." Because of this Gross was anxious for the BBC to make a decision quickly.

In December 1998 plaintiff expressed some dissatisfaction over Twenty Twenty's work related to the Treatment and the BBC commission. She thought the work lacked professionalism and that there were defects in the presentation. Nevertheless, the BBC once more expressed interest in the project, and in January 1999, plaintiff again traveled from New York to London to meet with BBC executives.

During the first half of 1999, Gross unsuccessfully sought a commitment from the BBC. In March 1999 she was informed that one of the BBC's channels had declined to commission the series, and that plaintiff and Twenty Twenty should revise the Treatment and resubmit it. They revised the Treatment, and Twenty Twenty then resubmitted it in April 1999, though Gross asserts she did not give permission for the resubmission. Further delays arose, due in part to funding constraints at the BBC. By June 1999 plaintiff was concerned that the series was becoming untimely.

On June 14, 1999 she states she formally withdrew the Treatment from both the BBC and from Twenty Twenty. She did this by sending several emails and faxes to executives of both defendants declaring that she was withdrawing the series "effective immediately." Twenty Twenty responded that it could not force the BBC to make a quick decision, and that it would not accept her withdrawal. Plaintiff began shopping the series to U.S. broadcasters.

On July 14, 1999 a Twenty Twenty executive informed her that a BBC channel had commissioned the series. She reminded both Twenty Twenty and the BBC that she had withdrawn the series, but was told that the BBC was going ahead with the production. A BBC executive contacted Gross and asked her to reconsider her withdrawal, to which she responded she would reconsider only if Twenty Twenty was replaced as co-producer.

Communication between plaintiff and both the defendants ceased shortly thereafter. The BBC went on to produce the series without Gross, and eventually broadcast the documentary as a three-part production entitled "Beastly Business." The series aired in late 2000 and early 2001, and was shown only on a BBC channel in the U.K., not in the U.S. Plaintiff contends this production relied on her research and ideas.

B. *Proceedings Below*

Plaintiff filed her suit against the BBC and Twenty Twenty on July 9, 2002 in the Southern District of New York, and her amended complaint raises 12 causes of action. As the district court noted, her complaint is based primarily on theories of misappropriation of ideas and unjust enrichment. Twenty Twenty moved to dismiss the complaint for lack of personal jurisdiction, and on December 4, 2002, plaintiff voluntarily dismissed her claims against that defendant. Shortly thereafter she also voluntarily dismissed her cause of action for violations of the Lanham Act.

The BBC filed a motion to dismiss for *forum non conveniens,* on which the district court held a hearing. It first ruled that Twenty Twenty was not an indispensable party, and that the action could pro-

ceed against the BBC alone. The trial court noted that Twenty Twenty could voluntarily defend itself if it felt its interests were being prejudiced, and that the BBC in any event retained the right to sue Twenty Twenty, if it chose to do so.

With respect to the *forum non conveniens* motion, the district court recognized plaintiff was entitled, on a *prima facie* basis, to vindicate her rights in her home forum. But, it went on to point out that British law would apply to this action, and that the relevant witnesses, aside from plaintiff, resided in Britain. The trial court conducted an oral analysis of the appropriate factors relating to a *forum non conveniens* motion, and determined that the balance of overall interests favored dismissal of the case.

Gross declared that if she were forced to sue in Britain, her action would in reality be barred because she could not afford the litigation expenses, since the British system does not permit contingent fee arrangements for such actions. The BBC countered that comparable arrangements were indeed available in some circumstances, and that any difficulty plaintiff would face obtaining counsel was due to the weakness of her causes of action. The district court expressed concern regarding Gross' ability to obtain counsel in the U.K. It addressed this concern by conditioning its dismissal on the BBC's acceptance of certain conditions designed to alleviate her difficulty in retaining British counsel. It suggested, for example, that the parties agree to waive fee-shifting arrangements that award attorneys' fees to the prevailing party, so that plaintiff would not face an oppressive financial burden if she lost.

In a written memorandum, the district court memorialized its earlier analysis and dismissed plaintiff's suit on the ground of *forum non conveniens*. It did so after the BBC willingly consented to three condi-

tions the district court imposed: (1) refraining from seeking security for costs and attorneys' fees from Gross; (2) waiving any right it might have under British law as a prevailing party to seek costs and attorneys' fees from plaintiff; and (3) refraining from interference with plaintiff's efforts to obtain an attorney on a contingent fee basis. The trial court also ruled that the waiver of prevailing party's costs and attorneys' fees should be mutual, so that Gross would have to waive her right to seek such fees from the BBC if she prevailed. The court's contemporaneous order dismissing plaintiff's complaint explicitly incorporated those conditions. We proceed to an analysis of the law.

## DISCUSSION

▇▇▇ The doctrine of *forum non conveniens* allows a district court to refuse to entertain jurisdiction of a case "even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A trial court may decline jurisdiction when doing so would "best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). The "change of venue" statute, 28 U.S.C. § 1404(a), is ordinarily used as the vehicle to transfer a case when the preferred forum is another district court. But, if the preferred venue is a foreign court, a federal trial court may dismiss under the doctrine of *forum non conveniens*.

▇▇▇ The decision to dismiss a case for *forum non conveniens* is confided to the sound discretion of the district court, to which we accord substantial deference. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d

21, 27 (2d Cir.2002). We reverse that court's decision only if we determine it clearly has abused its discretion. *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003). In the context of a *forum non conveniens* ruling, a district court abuses its discretion when its decision rests either (1) on an error of law, or (2) on a clearly erroneous finding of fact, or (3) if the court fails to consider all the relevant factors or unreasonably balances those factors. *See Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252; *Pollux,* 329 F.3d at 70.

In a recent *en banc* decision, we set out the multi-stage analysis a district court must perform to evaluate a *forum non conveniens* motion. *See Iragorri v. United Techs. Corp.,* 274 F.3d 65 (2d Cir.2001) (*en banc*). The initial inquiry is to determine the degree of deference to which the plaintiff's choice of forum is entitled. *Id.* at 73. Once that determination is made, the court must conduct the analysis set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Under *Gilbert,* step two is to determine whether an adequate alternative forum exists. If the answer is "yes," then the final, or third step, is to balance the private and public interests to decide whether the case should be adjudicated in the plaintiff's choice of forum or in the alternative forum proposed by defendant. *Gilbert,* 330 U.S. at 507–09, 67 S.Ct. 839.

## I Deference to Plaintiff's Choice of Forum

■ As we explained in *Iragorri,* a plaintiff's choice of forum is presumptively entitled to substantial deference. 274 F.3d at 70–71. Indeed, our legal system has traditionally deferred to the plaintiff's choice of forum, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839.

However, the degree of deference to the plaintiff's forum depends in part on a number of considerations, such as the plaintiff's own connection to that forum. The Supreme Court in *Piper Aircraft* explained that a plaintiff's choice of her home forum is ordinarily entitled to great deference because it is presumed to be convenient. 454 U.S. at 255–56, 102 S.Ct. 252. By contrast, if a foreign plaintiff selects a U.S. forum, that presumption of convenience is less plausible. In such a circumstance, the defendant may be able to demonstrate that the location was selected by plaintiff for forum-shopping reasons, such as the belief that local liability rules or damage awards will be favorable to it.

In *Iragorri* we confronted an intermediate proposition, one of a U.S. plaintiff suing in a U.S. forum that was not her home. We reconciled that situation with the strong deference for U.S. plaintiffs suing in their home forum and the weaker deference for foreign plaintiffs by applying a sliding scale

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*

274 F.3d at 71–72. Thus, while the initial presumption is to defer to the plaintiff's choice, the *Iragorri* scale is a tool to assess

whether there are reasons to doubt the presumption of convenience.

 Here there are somewhat conflicting considerations. Appellant flew to England in hopes of making a deal with the companies located there. She should not be surprised therefore that most of the witnesses and relevant documents are there. By seeking out business in that country, Gross could reasonably expect that disputes arising from those contacts might be litigated in the courts of Great Britain. Conversely, the BBC knew Ms. Gross was an American who lived in New York, and that much of her research on the project had been performed in the United States. The BBC's own presence in New York is reason for the BBC to expect that circumstances may arise that would require it to litigate here.

We think it significant that plaintiff has sued in her *home* forum, and that forum is one in which the BBC is amenable to process. We took *Iragorri en banc* to consider the deference due to a U.S. plaintiff suing *outside* her home forum. Nothing in our sliding scale approach calls into question the very strong deference traditionally given a U.S. plaintiff suing in her home forum. Importantly, the district court did not mention anything to suggest that appellant chose the forum for illegitimate reasons, nor do we find such evidence in the record. This case therefore presents a situation in which courts should initially be at their most deferential: a U.S. plaintiff suing at home for valid reasons. This conclusion does not foreclose a dismissal for *forum non conveniens*, since the forum may prove to be excessively burdensome to the defendant, *see Piper Aircraft*, 454 U.S. at 256 n. 23, 102 S.Ct. 252, but the starting point will be one that substantially favors the plaintiff.

The district court recognized this by noting that "[appellant] is entitled to the protection and the rights and vindication of the rights from a New York forum, at least on a *prima facie* basis." But that deference should have been very great indeed, and the fact that the trial court so readily ruled in favor of the defendant's choice of forum leads us to question whether the district court in fact gave appropriate deference to the plaintiff's choice.

## II Adequate Alternative Forum

The next step is to determine whether an alternative forum is available, because application of *forum non conveniens* doctrine "presupposes at least two forums in which the defendant is amenable to process." *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. 839. The alternative forum is normally acceptable if the defendant is amenable to process in the alternate forum, *see Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998), aside from the "rare circumstances" in which "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252.

 The BBC is unquestionably amenable to process in England and in fact has consented to be sued there. Appellant's concerns regarding the financial difficulties impeding her ability to sue in England do not affect the conclusion that England is an adequate alternative forum. A party's claim of financial hardship is not an appropriate aspect of determining the *availability* of an alternative forum, but rather is a factor to be considered in the balancing of interests that bear on convenience, a balancing process that is to be performed *after* identifying an alternative forum. *Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir.1996). Thus, the alternate forum element is satisfied.

### III Balancing of Public and Private Interests

Having identified the degree of preference for plaintiff's forum and the availability of an adequate alternative forum, the third step and the most substantial part of the analysis is to weigh the public and private interests to determine if the ends of justice would be served by dismissing the case from plaintiff's chosen forum.

Although the district court identified most of the appropriate factors and stated that the factors "come out ... heavily in favor of dismissal," its own analysis of the factors does not support such conclusion. When the district court judge addressed each factor, he himself concluded that the factors were either neutral or, at most, slightly favored England. This conclusion falls far short of the level of oppressiveness to defendant required to overturn a U.S. plaintiff's choice of her home forum. In short, the district court's ruling was the result of a demonstrably unreasonable balancing of the factors and hence amounted to an abuse of discretion. We turn to those factors.

### A. *Private Interest Factors*

■ As enumerated in *Gilbert,* the private interest factors include

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

330 U.S. at 508, 67 S.Ct. 839.

With respect to sources of proof and witnesses, the trial court determined that the relevant probative evidence and essential witnesses, aside from appellant, were located in England. It did note, however, that documents can easily be produced anywhere, and "witnesses tend to be deposed where they reside." It went on to state that even if the case were tried in New York, Gross would still have to travel to England to take depositions. It concluded that "there is very little in the balance of convenience that would change, regardless of whether it is a New York forum or a United Kingdom forum."

Recognizing that "most cases of this nature settle," the district judge distinguished between the discovery phase, "during which there is very little to choose between a UK forum and a New York forum," and an unlikely trial, during which "there will be more to choose in relationship to the UK forum." The district court was of the view that during discovery— which it believed was the most important period—the choice of forum was neutral. If the case proceeded to trial, it believed the balance of interests tipped somewhat in favor of England.

In considering the BBC's overall burden in defending the instant action in New York, the district court stated that "the BBC is suable here. It has litigated here in more than a half dozen occasions. It has been a plaintiff here and has been a defendant here. This is a neutral proposition."

The district court judge then addressed appellant's concerns with respect to obtaining representation in England. Considering the conditions it required the parties to accept, the judge decided that "that proposition becomes a mutual one." Although the parties continue to dispute on appeal whether appellant can in fact obtain adequate representation in England, we need not resolve that dispute, for resolving it will not help the BBC in any event. If the BBC is correct and representation is available, then the choice of England or

New York is neutral with respect to this issue. If appellant is correct, and she cannot obtain counsel in England, then the balance tips in favor of New York. In consequence, under no circumstances does the representation issue favor England.

The district court ended up by considering any remaining "catchall considerations," in particular the availability of Twenty Twenty as a defendant. It ruled that Twenty Twenty was not an indispensable party, and that it would be available through depositions, or could voluntarily defend its interests either in New York or in the U.K. In any event, it reminded the BBC that it would retain the right to sue Twenty Twenty if it saw fit to do so. These catchall considerations were "not appropriate or compelling one way or another."

■ In sum, the district court's own analysis of the private interest factors concluded that each factor was neutral except the availability of witnesses, which was neutral during discovery and somewhat favored England during the unlikely event of a trial. We do not see how this analysis tips the balance of interests strongly in favor of England, and it is plainly insufficient to overcome the initial presumption in favor of plaintiff's choice of her home forum.

We note, in addition, two further considerations that support retaining the case in New York. First, appellant is an individual who claims to be of modest means; the burden of litigating abroad is likely a greater obstacle to an individual than to a large business corporation. *See Carey v. Bayerische Hypo–Und Vereinsbank AG,* 370 F.3d 234, 238 (2d Cir.2004). Second, the subject matter of this suit is not like a real property action with a physical connection to a particular location. Rather, the subject matter is creative work—intellectual property—and so the suit itself has

less natural connection to any particular forum, leaving the convenience of the parties to be the primary consideration.

We commented in *Iragorri* that defendants as much as plaintiffs may be concerned with litigation tactics or forum shopping rather than convenience, and may move for dismissal under *forum non conveniens* to further those goals. We counseled district courts to "arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum." 274 F.3d at 75. Although we express no view on whether the BBC filed this motion as a litigation tactic, it has not persuaded us that defending in the Southern District would be particularly burdensome to it.

## B. *Public Interest Factors*

■ The public interest factors include the administrative difficulties flowing from court congestion; the

> local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *see Gilbert,* 330 U.S. at 509, 67 S.Ct. 839.

The district court did not specifically address these factors, except to the extent they were a part of its "catchall considerations." However, once again they are either neutral or at most slightly favor England. English law would govern most of the claims in this case, which suggests some preference for England. We note

however that there are few if any countries in the world whose body of law is more amenable to application in the United States than Great Britain's. The district court did not comment on the application of English law, and we do not believe application of such law creates a burden on the court.

The remaining factors do not tip notably one way or the other. Gross is from New York and the BBC is from Great Britain, so each forum can claim a connection to one of the parties. Overall the public interest factors may tip somewhat in favor of England, but not significantly. Once again, this is insufficient to support dismissal.

### IV Conditions Upon Dismissal

Finally, we must say a word about the conditions imposed on the parties as part of the dismissal. In this case, the BBC's motion to dismiss was granted only after the parties agreed to waive their statutory rights relating to contingent fees and fee-shifting for prevailing parties.

It is not uncommon for a district court to qualify a dismissal for *forum non conveniens* on the movant's acceptance of certain conditions to reduce the prejudice to the plaintiff. For example, if the district court is unsure that the defendant would in fact be amenable to suit in the proposed foreign forum, it may require the defendant to consent to jurisdiction in that forum before dismissing the case. *See, e.g., Jota v. Texaco Inc.*, 157 F.3d 153, 159 (2d Cir.1998). Or if the statute of limitations will have run before the new action is filed, the court may ask the defendant to waive its arguments on that ground. *See, e.g., Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir.2002). This makes some sense since it is the defendant who is seeking to have the action effectively transferred for its convenience.

In the above examples, the defendant is asked to cede a *personal* defense that is waivable at its will. *Cf. Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir.1987) (statute of limitations is a personal defense that is waived if not promptly pleaded); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir.1966) (venue is a personal privilege that is waivable at will); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir.1983) (failure to raise defense of *res judicata* promptly results in waiver).

The conditions imposed in the case at bar are somewhat more troublesome to us because they are primarily institutional rather than personal in nature. A legal system's rules pertaining to fee-shifting and contingent fees reflect policy judgments about the goals of that legal system, the incentives for and against litigation, and the availability of representation in various circumstances. The British system has over the years engaged in a lengthy public debate that has lead to a series of contentious changes in its allowance of conditional fee arrangements in certain circumstances.

Beginning in 1928, a government report on legal aid urged local law societies to provide free services for the poor since contingent fee arrangements had been opposed by the Law Society since 1912. In 1949 England created a comprehensive legal aid system and continued in 1979 through the Royal Commission on Legal Services to recommend against contingency fees. There were numerous studies and reports issued through the 1980s, particularly the Green Papers that reopened the issue of contingency fees. Finally, in 1990 the Courts and Legal Services Act of 1990 approved conditional fee agreements, which took five years to come into effect. *See, e.g.,* Richard L. Abel, *An American Hamburger Stand in St. Paul's Cathedral: Replacing Legal Aid with Conditional*

*Fees in English Personal Injury Litigation,* 51 DePaul L.Rev. 253 (2001) (surveying the recent developments in British conditional fee arrangements); Michael Zander, *Will the Revolution in the Funding of Civil Litigation in England Eventually Lead to Contingency Fees?,* 52 DePaul L.Rev. 259 (2002) (same).

There is a point at which conditions cease to be a limitation on the defendant and become instead an unwarranted intrusion on the transferee forum's policies governing its judicial system. By applying conditions that implicate the British legal system's rules on fee-shifting and the availability of contingent fees, the district court effectively stepped into the middle of Britain's policy debate on those issues. Principles of comity demand that we respect those policies. We urge the district courts to be cognizant of the prudential choices made by foreign nations and not to impose conditions on parties that may be viewed as having the effect of undermining the considered policies of the transferee forum.

CONCLUSION

Accordingly, for the reasons stated, the judgment of the district court dismissing plaintiff's complaint is vacated and the case is remanded to the Southern District of New York for further proceedings not inconsistent with this opinion.